1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    STANLEY W. MUNDY,                          No.  2:23-cv-0061 WBS AC P

12                    Plaintiff,

13         v.                                     ORDER AND FINDINGS AND
                                                  RECOMMENDATIONS
14    PATRICK CAVELLO, et al.,

15                    Defendants.

16

17         Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983 and

18    Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132.  Upon screening the

19    first amended complaint, the court gave plaintiff the options of proceeding on the complaint as

20    screened or filing an amended complaint.  ECF No. 15.  Plaintiff chose to amend the complaint

21    (ECF No. 17) and has now filed a second amended complaint (ECF No. 19).

22         I.      Second Amended Complaint

23               A.      Statutory Screening of Prisoner Complaints

24         The court is required to screen complaints brought by prisoners seeking relief against "a

25    governmental entity or officer or employee of a governmental entity."  28 U.S.C. § 1915A(a).  A

26    claim "is [legally] frivolous where it lacks an arguable basis either in law or in fact."  Neitzke v.

27    Williams, 490 U.S. 319, 325 (1989).  The court may dismiss a claim as frivolous if it is based on

28    an indisputably meritless legal theory or factual contentions that are baseless.  Id., 490 U.S. at

1

327.  The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis.  Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989), superseded by statute on other grounds as stated in Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

In order to avoid dismissal for failure to state a claim a complaint must contain more than "naked assertion[s]," "labels and conclusions," or "a formulaic recitation of the elements of a cause of action."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007).  In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A claim upon which the court can grant relief has facial plausibility.  Twombly, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678 (citation omitted).  When considering whether a complaint states a claim, the court must accept the allegations as true, Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), and construe the complaint in the light most favorable to the plaintiff, Jenkins v. McKeithen, 395 U.S. 411, 421 (1969) (citations omitted).

> B.    Factual Allegations of the Second Amended Complaint

The first amended complaint is comprised of four separate claims and alleges that individual defendants Covello, Macomber, Davidson, Gates, Stacy, Ullery, Cribari, Miranda, Gaynor, Hla, and Hernandez, as well as entity defendants Mule Creek State Prison (MCSP), California Department of Corrections and Rehabilitation (CDCR), California Prison Industry (CALPIA), and California Correctional Health Care Services (CCHCS), violated plaintiff's rights under the Eighth and Fourteenth Amendments and the ADA.  ECF No. 19.

In Claims One and Two, plaintiff alleges that he suffers from a soy allergy and that all defendants implemented customs and policies that violated medical ethics, CDCR and CCHCS policy, the ADA, and federal food safety laws and repeatedly denied him a prescribed non-soy, cardiac diet.  Id. at 5-14.  Defendants knew from his medical records, grievances, or witnessing themselves that plaintiff has a soy allergy and has had allergy symptoms on hundreds of

occasions.  Id. at 7-8, 11-12.  Despite this knowledge, they have refused to change their unlawful policies.  Id. at 8, 11-12.  With respect to specific defendants, plaintiff alleges that Davidson packaged unlabeled food in violation of required state and federal standards, while Macomber, Gates, and Covello were responsible for the unlawful policy of not labeling food for allergens.  Id. at 5-6, 10-11.  Stacy, Ullery, Cribari, and Miranda "were repeatedly told and refused to change unlawful policy" or otherwise protect plaintiff.  Id. at 7, 11.  Gaynor, Hernandez, and Hla followed the unlawful policy and failed to prescribe plaintiff a non-soy, cardiac diet despite knowing he had been prescribed one in the past.  Id.  Defendants Macomber, Davidson, Gates, Covello, CDCR, CALPIA, CCHCS, and MCSP are sued in their official capacity for injunctive relief.  Id. at 5, 10.

Claim Three asserts that plaintiff suffers from serious, life-threatening conditions and that all individual defendants implemented customs and policies that violated medical ethics, CDCR and CCHCS policy, and federal laws, and that they have denied or delayed treatment for his conditions.  Id. at 16-22.  Macomber, Gates, Davidson, Covello, Stacy, Ullery, Cribari, and Miranda have failed in their supervisory capacities because they have allowed plaintiff's medical treatment to be denied or delayed and have failed to properly train or discipline their subordinates or change the policies.  Id. at 16-17, 21.  Gaynor, Hla, and Hernandez have delayed or refused to provide plaintiff treatment, including surgical care.  Id. at 17, 21.  Plaintiff alleges that all defendants were notified he had a non-soy diet but refused to provide it, causing him to suffer numerous and severe reactions, including gastrointestinal bleeding, hives, and skin rashes, for which they have refused to provide the prescribed treatment.  Id. 17-18.  All defendants, and particularly Hernandez, Gaynor, and Hla, were aware that plaintiff had been prescribed various medical treatments when he was transferred to MCSP but they have failed to provide them.  Id. at 18, 21.  After plaintiff suffered a severe allergic reaction, including face swelling, hives, and vomiting blood, Gaynor, Hernandez, and Hla, who witnessed the reaction, continued to refuse dietary care or obtain his prior records, and refused to document his symptoms going forward.  Id. at 18-19.  Hernandez and Hla also prevented other medical and correctional staff from documenting plaintiff's reactions.  Id. at 19-20.  The supervisors refused to investigate plaintiff's

1   claims or discipline Gaynor, Hernandez, and Hla.  Id. 18-20.  After an MRI showed that plaintiff

2   required knee surgier, Hla and Hernandez refused to send over the MRI films, delaying his

3   surgery by five months.  Id. at 20.  They also refused to provide him with his prescribed pain

4   medication.  Id.

5           In his last claim, plaintiff asserts that the CDCR has violated his rights under the ADA by

6   creating a non-viable process for obtaining ADA accommodations and appealing adverse

7   decisions.  Id. at 23-25.  The policy denies him the right to be present, have notification, present

8   evidence, or call witnesses to support his request for an accommodation.  Id. at 23.  Even though

9   the CDCR knows plaintiff has dyslexia and nerve damage in his right arm that prevents him from

10  writing for more than thirty minutes at a time, he has been denied a computer and the ability to

11  copy and paste legal research.  Id. at 25.

12              C.      Claims for Which a Response Will Be Required

13          After conducting the screening required by 28 U.S.C. § 1915A(a), the court finds that

14  plaintiff's allegations against Hla, Hernandez, and Gaynor are sufficient to state claims for relief

15  under the Eighth Amendment and these defendants will be required to respond to the complaint if

16  plaintiff chooses not to amend.  See Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)

17  (deliberate indifference "may appear when prison officials deny, delay or intentionally interfere

18  with medical treatment" (citation omitted)).

19              D.      Failure to State a Claim

20                  i.      Sovereign Immunity

21          Once again, plaintiff's § 1983 claims against the CDCR, MCSP, CALPIA, and CCHCS are

22  barred by sovereign immunity because they are arms of the state.  See Howlett v. Rose, 496 U.S.

23  356, 365 (1990) (the state and arms of the state "are not subject to suit under § 1983" (citing Will

24  v. Mich. Dep't of State Police, 491 U.S. 58 (1989))).  Furthermore, to the extent plaintiff indicates

25  he is suing some of the defendants in their official capacities for injunctive relief in the form of

26  policy change, he fails to demonstrate that his injury is a result of a deficient policy as opposed to

27  the independent conduct of individuals.

28  ////

4

1          ii.    Personal Involvement

2          "Liability under § 1983 must be based on the personal involvement of the defendant,"

3   Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998) (citing May v. Enomoto, 633 F.2d

4   164, 167 (9th Cir. 1980)), and "[v]ague and conclusory allegations of official participation in civil

5   rights violations are not sufficient," Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)

6   (citations omitted).  Furthermore, "[t]here is no respondeat superior liability under section 1983."

7   Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted).  A supervisor may be liable

8   for the constitutional violations of his subordinates if he "knew of the violations and failed to act

9   to prevent them."  Taylor, 880 F.2d at 1045.  Finally, supervisory liability may also exist without

10  any personal participation if the official implemented "a policy so deficient that the policy itself is

11  a repudiation of the constitutional rights and is the moving force of the constitutional violation."

12  Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations

13  marks omitted), abrogated on other grounds by Farmer v. Brennan, 511 U.S. 825, 836-38 (1970).

14         Plaintiff makes only general and conclusory allegations that defendants Covello,

15  Macomber, Davidson, Gates, Stacy, Ullery, Cribari, and Miranda were supervisors, knew about

16  his conditions because of his medical records and grievances, and have violated his rights or

17  implemented policies or customs that violated his rights.  Because plaintiff has not identified any

18  specific action taken by these defendants or made more than conclusory assertions that they knew

19  about his medical conditions and the failure to treat them, he fails to state any claims against them

20  because general allegations that plaintiff's rights were violated or against defendants generally are

21  insufficient.  Moreover, while plaintiff alleges that defendants implemented constitutionally

22  deficient policies, he once again fails to allege facts indicating that the violation of his rights was

23  due to the challenged policy rather than the actions of individuals.  He further fails to state any

24  claims based on a failure to train because he has not demonstrated that the violations were so

25  widespread as to put supervisory defendants on notice regarding a need to train their subordinates.

26  See Ting v. United States, 927 F.2d 1504, 1512 (9th Cir. 1991) ("[T]he inadequacy of . . . training

27  may serve as a basis for liability under section 1983 . . . 'only where the failure to train amounts

28  to deliberate indifference to the rights of persons with whom the [subordinates] come into

5

1  contact.'" (citation omitted)); <u>Flores v. County of Los Angeles</u>, 758 F.3d 1154, 1159 (9th Cir.

2  2014) (pattern of similar violations ordinarily necessary to show defendant was on notice

3  regarding need for training).

4              iii.    Due Process

5          Plaintiff appears to be attempting to state a due process claim based on the denial or

6  requests for disability accommodation.  ECF No. 19 at 23-25.  A viable procedural due process

7  claim requires "deprivation of a constitutionally protected liberty or property interest and denial

8  of adequate procedural protection."  <u>Krainski v. Nevada ex rel. Bd. Of Regents of Nev. Sys. of</u>

9  <u>Higher Educ.</u>, 616 F.3d 963, 970 (9th Cir. 2010) (citing <u>Brewster v. Bd. of Educ. of the Lynwood</u>

10  <u>Unified Sch. Dist.</u>, 149 F.3d 971, 982 (9th Cir. 1998)).  However, it once again appears that

11  plaintiff is attempting to challenge determinations as whether to grant requests for

12  accommodation, not whether to remove them.  Accordingly, plaintiff was not at risk of being

13  deprived of an interest in any accommodation devices he may have been seeking and he fails to

14  identify any specific liberty interest that was at stake.  Furthermore, to the extent the

15  accommodation request process can be considered a form of administrative grievance or plaintiff

16  claims he was denied access to the grievance process, prisoners do not have "a separate

17  constitutional entitlement to a specific prison grievance procedure."  <u>Ramirez v. Galaza</u>, 334 F.3d

18  850, 860 (9th Cir. 2003) (citing <u>Mann v. Adams</u>, 855 F.2d 639, 640 (9th Cir. 1988)).  Plaintiff's

19  allegations are therefore insufficient to state a due process claim.

20              iv.    Access to the Court

21          Plaintiff asserts that defendants deprived him of his right to access the courts.  ECF No. 19

22  at 23-25.  While inmates have a "fundamental constitutional right of access to the courts," <u>Lewis</u>

23  <u>v. Casey</u>, 518 U.S. 343, 346 (1996) (quoting <u>Bounds v. Smith</u>, 430 U.S. 817, 828 (1977)), that

24  right covers only limited types of cases: direct appeals from convictions for which the inmates are

25  incarcerated, habeas petitions, and civil rights actions regarding prison conditions, <u>id.</u> at 354.

26  "Impairment of any other litigating capacity is simply one of the incidental (and perfectly

27  constitutional) consequences of conviction and incarceration."  <u>Id.</u> at 355.  In this case, plaintiff

28  fails to provide any information regarding the case(s) he was trying to pursue or identify who

interfered with his access to the courts and how.  As a result, he fails to state a claim for relief.

v.    ADA and RA Claims

To state a claim under Title II of the ADA, a plaintiff must allege that:

> (1) he "is an individual with a disability;" (2) he "is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities;" (3) he "was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity;" and (4) "such exclusion, denial of benefits, or discrimination was by reason of [his] disability."

McGary v. City of Portland, 386 F.3d 1259, 1265 (9th Cir. 2004) (alteration in original)

(quoting Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002) (per curiam)).

To be entitled to compensatory damages under the ADA, plaintiff must demonstrate that the discrimination he experienced was the result of deliberate indifference, which "requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood."  Duvall, 260 F.3d at 1138-39 (citations omitted).  "When the plaintiff has alerted the public entity to his need for accommodation . . . , the public entity is on notice that an accommodation is required, and the plaintiff has satisfied the first element of the deliberate indifference test."  Id. at 1139.  "[I]n order to meet the second element of the deliberate indifference test, a failure to act must be a result of conduct that is more than negligent, and involves an element of deliberateness."  Id. (citations omitted)

To the extent plaintiff is alleging that the CDCR has violated his rights under the ADA, the claim fails.  ECF No. 19 at 23-25.  Plaintiff does not identify the programs, services, or activities he was excluded from, nor does he explain how denial of representation or a hearing denied him access to a program, service, or activity.  To the extent plaintiff is attempting to claim he was prevented from accessing the grievance process, he does not explain how access was denied as a result of his disability (i.e., what accommodations was he denied for what disability and how did that prevent him from accessing the grievance process).

E.    Equal Protection

The Fourteenth Amendment's Equal Protection Clause requires the State to treat all

1    similarly situated people equally.  City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439

2    (1985) (citation omitted).  "To state a claim for violation of the Equal Protection Clause, a

3    plaintiff must show that the defendant acted with an intent or purpose to discriminate against him

4    based upon his membership in a protected class."  Serrano v. Francis, 345 F.3d 1071, 1082 (9th

5    Cir. 2003) (citing Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998)).  Alternatively, a

6    plaintiff may state an equal protection claim if he shows similarly situated individuals were

7    intentionally treated differently without a rational relationship to a legitimate government

8    purpose.  Vill of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (citations omitted).

9         Plaintiff makes general claims that he has been denied equal protection but does not

10   identify the basis for the claim.  "'[T]he disabled do not constitute a suspect class' for equal

11   protection purposes," Lee v. City of Los Angeles, 250 F.3d 668, 687 (9th Cir. 2001) (quoting

12   Does 1-5 v. Chandler, 83 F.3d 1150, 1155 (9th Cir. 1996)), and plaintiff does not allege facts

13   sufficient to show that he was treated differently from other, similarly situated inmates.  His

14   conclusory assertion that his right to equal protection has been violated is insufficient to state a

15   claim against any defendant.

16              F.    No Leave to Amend

17        Leave to amend should be granted if it appears possible that the defects in the complaint

18   could be corrected, especially if a plaintiff is pro se.  Lopez v. Smith, 203 F.3d 1122, 1130-31

19   (9th Cir. 2000) (en banc).  However, if, after careful consideration, it is clear that a complaint

20   cannot be cured by amendment, the court may dismiss without leave to amend.  Cato v. United

21   States, 70 F.3d 1103, 1105-06 (9th Cir. 1995).

22        The undersigned finds that, as set forth above, some portions of the complaint fail to state

23   a claim upon which relief may be granted.  Plaintiff has already been given an opportunity to

24   amend the complaint and advised what kind of information he needed to provide.  However, the

25   allegations of the second amended complaint are no more detailed than those in the first amended

26   complaint and the second amended complaint continues to make only general, conclusory

27   allegations against the majority of defendants.  Given the lack of additional facts provided by

28   plaintiff, it does not appear that further amendment would result in additional cognizable claims.

1  As a result, leave to amend would be futile and the complaint should be dismissed without leave

2  to amend.

3       II.    Motions for Miscellaneous Relief

4          The second amended complaint in this action was initially filed in Mundy v. City and

5  County of Sacramento (Mundy II), No. 2:23-cv-0059 TLN CKD (E.D. Cal.), because plaintiff

6  labeled it with the wrong case number.  See Mundy II, ECF Nos. 34, 35.  After the complaint was

7  ordered filed in this case, plaintiff filed a motion for an extension of time to file his amended

8  complaint in this case and for the case number on the amended complaint to be corrected.  ECF

9  Nos. 20, 21.  He then filed a request that the improperly labeled amended complaint be

10  disregarded and replaced with a correctly labeled copy.  ECF Nos. 22, 23.  These motions will be

11  denied as moot because the incorrectly labeled amended complaint was filed in this case at the

12  direction of the judge in Mundy II, resulting in a timely filed second amended complaint.

13          Plaintiff also filed a motion requesting that proceedings in this case be stayed for ninety

14  days because he was being scheduled for heart surgery which would result in his transfer and lack

15  of access to his records and the law library.  ECF No. 25.  Plaintiff subsequently filed a notice of

16  change of address in another case showing he was transferred to the California Health Care

17  Facility.  ECF No. 26.  The docket now reflects that he has been returned to MCSP.  ECF No. 27.

18  As a result, the request for a stay appears to be moot and will be denied.

19       III.   Plain Language Summary of this Order for a Pro Se Litigant

20          Some of the allegations in the second amended complaint state claims against the

21  defendants and some do not.  You have stated Eighth Amendment claims against defendants

22  Hernandez, Gaynor, and Hla.  You have not stated any other claims against these defendants, and

23  you have not stated any claims against defendants Covello, Macomber, Davidson, Gates, Stacy,

24  Ullery, Cribari, Miranda, MCSP, CDCR, CALPIA, and CCHCS.  You were previously advised

25  that to state claims against the individual defendants, you must allege facts showing what each

26  defendant did or did not do that you believe violated your rights.  Since you have not added any

27  additional facts it is being recommended that the claims against these defendants be dismissed

28  without leave to amend.

1    In accordance with the above, IT IS HEREBY ORDERED that:

2    1.  Plaintiff's motions for an extension of time (ECF No. 21), to correct filing (ECF No.

3    22), and for a stay (ECF No. 25) are DENIED as moot.

4    2.  The complaint states cognizable Eighth Amendment claims against defendants Hla,

5    Hernandez, and Gaynor.  Service is appropriate for these defendants.

6    3.  E-Service on defendants Hla, Hernandez, and Gaynor will be directed by separate

7    order.  Plaintiff should not complete service paperwork for these defendants unless ordered to do

8    so by the court.

9    IT IS FURTHER RECOMMENDED that all claims against defendants Covello,

10    Macomber, Davidson, Gates, Stacy, Ullery, Cribari, Miranda, MCSP, CDCR, CALPIA, and

11    CCHCS and all claims against Hla, Hernandez, and Gaynor, except for the Eighth Amendment

12    claims, be dismissed without leave to amend.

13    These findings and recommendations are submitted to the United States District Judge

14    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days

15    after being served with these findings and recommendations, plaintiff may file written objections

16    with the court.  Such a document should be captioned "Objections to Magistrate Judges Findings

17    and Recommendations."  Plaintiff is advised that failure to file objections within the specified

18    time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153

19    (9th Cir. 1991).

20    DATED: May 2, 2025

21

ALLISON CLAIRE
22    UNITED STATES MAGISTRATE JUDGE

23

24

25

26

27

28

10